### *In re* CLARK'S APPEAL.

PAUPERS—SUPPORT—KIN—LIABILITY—RETROSPECTIVE STATUTE.

> Act No. 101, Pub. Acts 1909, providing that the kin of indigent feeble minded persons be required to reimburse the State for the expenses of their maintenance at the charge of the public, applies to inmates that were admitted to hospitals before the passage of the statute.

Error to Eaton; Chester, J., presiding. Submitted April 8, 1915. (Docket No. 29.) Decided June 7, 1915.

Sarah P. Clark brings error from an order of the circuit court affirming a probate decree requiring her to repay the State for care of a feeble minded pauper. Affirmed.

*E. R. Boyles,* for petitioner.

*L. H. McCall,* for respondent.

OSTRANDER, J. On an appeal from proceedings in probate court the circuit court held that, from and after the date of its passage, Act No. 101, Pub. Acts

1909 (2 How. Stat. [2d Ed.] § 3768 *et seq.*), applied in cases of patients admitted to the State hospital, before the passage of the act. It was therefore ordered that the appellant, mother of the patient, pay to the State a certain sum for the cost of maintaining the patient at the hospital after the taking effect of the law. Whether the law applies in cases of public patients admitted to the hospital before its passage, or only to those admitted under the provisions of the act itself, is the single question presented. Appellant's son was admitted a patient in 1901.

The act is entitled "An act to revise the law relative to the care of the feeble-minded and epileptic," and section 18 provides that:

"If a public patient is an indigent person and has relatives who are legally liable for his support, the prosecuting attorney of the county in which the order of admission was made shall petition the probate court of said county in his name as prosecuting attorney, stating that such person has been ordered admitted * * * that he is an indigent person, and that he has relatives, naming them, who are legally liable for his support, and praying that said relatives may be adjudged to reimburse the State for the expenses paid and to be paid by it in his behalf."

The argument is based, upon both sides, largely upon the wording of the law and of previous laws upon the same general subject, and in part, also, upon what is regarded by appellant as a legislative construction of Act No. 101, found in Act No. 27, Pub. Acts 1913, which is entitled:

"An act relative to inmates of the home for the feeble-minded and epileptic who became inmates prior to the eighteenth day of May, nineteen hundred nine; and to provide for giving such patients the same status as inmates committed to said home after said date."

No question is raised concerning the power of the

legislature to provide for an enforced contribution from relatives for the support of patients committed to the institution as public patients. As has been stated, the only question is whether it is plain that it intended to make the law of 1909 apply to all public patients then in the institution as well as those thereafter received. Admitting that the State may cause these unfortunate persons to be segregated and kept and maintained at a public institution, and may compel relatives to bear, in whole or in part, the cost of maintenance, it seems clear that it may fix the time when such contributions shall begin. It would not lose the right by foregoing its exercise. No vested right in a relative to have the free maintenance of a patient continued would arise because for a period the State had freely maintained the patient. There is in Act No. 101 no language which implies that relatives of patients already admitted as public patients will not be called upon to contribute to the expense of maintenance to be thereafter furnished by the State. On the contrary, the language is broad enough to include the relatives of those within the institution. No reason appears for excepting the relatives of those then in the institution from the operation of the act. Consequently, assuming the power to exist to enforce contributions at any time, fair construction would make the act applicable to the relatives of those then within the institution, as well as to relatives of those thereafter admitted. And, as indicative of legislative purpose, the fact that by law certain relatives of such unfortunates have always been held to be liable to contribute to their support in the institution is persuasive in reaching the conclusion that the relatives of no class of patients were intended to be excluded, or to be saved, from the operation of the law. I regard it as unnecessary to consider the force and effect of the act of 1913 as indicating a different construction

of the previous law. However, it occurs to me, after reading the later act, that its purpose was not the construction of the earlier law.

The judgment of the circuit court is right, and is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.